UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Aron R. Thompson and Nicole R. Thompson,

Debtors.

Case No. 22-11921-rmb

Chapter 7

**DECISION ON MOTION FOR RELIEF FROM STAY**

Debtors Aron and Nicole Thompson are the sole owners of Thompson Exteriors LLC. Shortly before the debtors filed their chapter 7 petition, creditor 12 Gauge Construction LLC filed a complaint in Wisconsin state court against Thompson Exteriors and both debtors. Pursuant to 11 U.S.C. § 362(a), the debtors' bankruptcy filing stayed the state court case against the debtors. 12 Gauge Construction now seeks an order confirming that it can proceed with its claims against Thompson Exteriors in state court. For the reasons set forth below, the court grants the motion.

## BACKGROUND

12 Gauge Construction alleges the following facts in its motion. 12 Gauge Construction is a general contractor and was hired to construct a mixed-use development project in Wausau, Wisconsin. 12 Gauge Construction subcontracted with Thompson Exteriors for the framing and rough carpentry work. After paying Thompson Exteriors a portion of the contract amount, 12 Gauge Construction received reports from Thompson Exteriors' subcontractors indicating that they had not been paid. 12 Gauge Construction ultimately terminated its contract with Thompson Exteriors before Thompson Exteriors' work on the project was complete.

On October 18, 2022, 12 Gauge Construction filed a complaint in Wisconsin state court seeking to recover sums that 12 Gauge Construction alleges are owed by Thompson Exteriors

and the debtors as its owners. 12 Gauge Construction asserted a claim for breach of contract against Thompson Exteriors and claims for theft by contractor and civil theft against Thompson Exteriors and the debtors. All three of the defendants were served on October 21, 2022, and under Wisconsin state law, their answer to the complaint was due on December 5, 2022.

The debtors filed a voluntary chapter 7 petition on December 5, 2022. The same day, their counsel filed a Suggestion of Bankruptcy in the state court that stated "this action has been stayed by operation of 11 U.S.C. § 362." No further activity has occurred in the state court case.

12 Gauge Construction acknowledges that its claims against the debtors are stayed, but it wants to proceed with its claims against Thompson Exteriors, which has not filed bankruptcy. Because the debtors told the state court that the "action" had been stayed by the bankruptcy, 12 Gauge Construction seeks an order confirming that the stay does not apply to Thompson Exteriors or an order granting relief from any stay that may apply to Thompson Exteriors. The debtors agree that the automatic stay generally does not apply to non-debtors such as Thompson Exteriors, but they argue that "inasmuch as a judgment against Thompson Exteriors would have the effect of being a judgment against the Debtors, the automatic stay does apply."

The court held hearings on the motion on February 2 and February 16, 2023. At the latter hearing, the court issued a tentative ruling that 12 Gauge Construction should be permitted to proceed with its claims against Thompson Exteriors. The court now issues this decision and order memorializing and expanding on its tentative oral ruling.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a). Venue is proper in this court as provided in 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (G).

## DISCUSSION

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]." 11 U.S.C. § 362(a)(1).[1] This stay is "automatic" and self-executing; it does not require the action of the bankruptcy court, or any other court, to be enforceable. *In re Galmore*, 390 B.R. 901, 905 (Bankr. N.D. Ind. 2008).

The automatic stay is broad, but it "generally does not extend to non-debtors." *In re Wiseman*, 617 B.R. 906, 911 (Bankr. E.D. Wis. 2020); *see also United States v. Wright*, 57 F.3d 561, 562 (7th Cir. 1995) ("The automatic stay does not apply to guarantors, sureties, insurers, partners, and other persons liable on the debt."); *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983) ("The clear language of Section 362(a)(1) thus extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants."); *Winfield Sols., LLC v. W S Ag Ctr., Inc.*, No. 17-CV-942-SLC, 2020 WL 8613974, at *2 (W.D. Wis. June 19, 2020) ("The stay, however, protects only the debtor, not non-bankrupt co-debtors[.]").

The Seventh Circuit has identified two situations in which the § 362(a)(1) stay could be extended to non-debtors. *See In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991). "The first is applicable where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment

---

[1] Section 362(a) stays several types of actions a creditor might take. *See* 11 U.S.C. § 362(a). The parties here focus on the stay under § 362(a)(1). The court expresses no opinion as to whether the stay under any other subsection of § 362(a) might apply to stay lawsuits against non-debtors. For example, a claim against a non-debtor may involve property of the estate and might therefore be stayed under § 362(a)(3).

against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Id.* (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). "The second operates where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan 'irreparable harm.'" *Id.* The parties here focus on the "identity of interest" test, which was first recognized by the Fourth Circuit in *A.H. Robins*.

      A.      **Whether the § 362(a)(1) Stay Applies to Thompson Exteriors**

Before proceeding to consider the merits of the parties' arguments under *A.H. Robins*, we must pause to consider an important procedural issue. 12 Gauge Construction filed what it called a motion for relief from the stay. However, the primary relief sought in the motion is not relief from the stay; rather, 12 Gauge Construction primarily wants an order confirming that the stay does not apply to Thompson Exteriors.[2] If the stay does apply, 12 Gauge believes relief from the stay is warranted under 11 U.S.C. § 362(d). The debtors oppose the motion, arguing that the stay extends to Thompson Exteriors and that there is not sufficient cause to lift the stay.

Both parties seem to take for granted that if the stay under § 362(a)(1) extends to Thompson Exteriors under the *A.H. Robins* "identity of interest" test, the extension is automatic and happens by operation of the statute rather than by court order. But that does not appear to be the case. *A.H. Robins* involved an adversary proceeding filed by the debtor in which the debtor sought to enjoin a group of plaintiffs from pursuing claims against several non-debtor co-defendants in cases pending outside the bankruptcy. 788 F.2d at 996. The court entered the requested injunction, relying for authority on 11 U.S.C. § 105(a) and § 362(a). *Id.* Unlike a stay

---

[2] Orders flowing from such requests are often termed "comfort orders," because they give a party in interest, and perhaps a non-bankruptcy court, comfort that their actions will not violate the automatic stay. *See, e.g.*, *In re Hill*, 364 B.R. 826, 827 n.1 (Bankr. M.D. Fla. 2007) ("A 'comfort order' is a bankruptcy term of art for an order confirming an undisputed legal result, and often is entered to confirm that the automatic stay has terminated."). Such orders are mandated by 11 U.S.C. § 362(j) in certain circumstances, but many courts have held that even where § 362(j) does not apply bankruptcy courts have "the discretion to enter a comfort order if warranted by the facts." *In re Ross*, No. 18-11356, 2019 WL 480269, at *3 (Bankr. N.D. Miss. Feb. 6, 2019).

4

or injunction imposed under § 105(a), the stay imposed by § 362(a) is automatic and requires no action from any court to be enforceable. The injunction would not have been necessary if the § 362(a)(1) stay automatically extended to the non-debtors. The court could have instead declared that the automatic stay was already in effect. That the court took affirmative action to impose a stay indicates that application of the stay to the non-debtor co-defendants was not, in fact, automatic.

Many of the courts applying *A.H. Robins* have held that "extensions of the automatic stay to preclude the continuation of a suit against a non-debtor are essentially a utilization of the bankruptcy court's equity jurisdiction under section 105 to issue an injunction extending the stay." *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1011 (N.D. Iowa 2001) (collecting cases). In a thorough opinion that analyzed case law around the country regarding the "identity of interest" test, as well as the legislative history of § 362(a), the court in *C.H. Robinson Co.*, concluded that "the automatic stay under section 362(a)(1) of the Bankruptcy Code is not truly 'automatic' when invoked against non-debtor codefendants." *Id.* at 1018. The court held that "[t]he party seeking to invoke an extension of the stay must affirmatively seek an order from the bankruptcy court, which has authority to extend the protections of 362(a) pursuant to its equity powers under section 105." *Id.*

The Seventh Circuit has not yet considered whether the § 362(a)(1) stay could extend automatically to non-debtors, or indeed whether it could be extended to non-debtors at all. In the two cases in which the Seventh Circuit considered *A.H. Robins*, the court concluded that the circumstances did not satisfy the "identity of interest" test. *See Fernstrom*, 938 F.2d at 736 (holding that *A.H. Robins* did not apply because there was only one claimant under the insurance policy at issue); *Fox Valley Constr. Workers Fringe Ben. Funds v. Pride of the Fox Masonry &*

5

*Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (holding that the district court had authority to sanction the debtor's lawyer based on pre-petition conduct in a non-bankruptcy case). The Seventh Circuit has in other cases stated that the § 362(a) stay does not extend to non-debtors, suggesting that if the stay can be extended to non-debtors the Seventh Circuit would require a bankruptcy court to affirmatively impose the stay using its power under § 105(a). *See Wright*, 57 F.3d at 562 (holding that "[t]he automatic stay does not apply to guarantors, sureties, insurers, partners, and other persons liable on the debt"); *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994) (citing *A.H. Robins* and noting that § 105(a) "complements the automatic stay provision of section 362 of the Code (applicable to suits against the debtor) by permitting the bankruptcy court" to issue orders related to suits pending in non-bankruptcy courts); *Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1328 (7th Cir. 1992) ("Contempt proceedings against non-bankrupt persons obliged to perform the acts spelled out in the injunction are not forbidden by the automatic stay."); *see also Fox Valley Constr. Workers*, 140 F.3d at 666 ("The stay, however, protects only the debtor, unless the debtor and some third party have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy.").

Many lower courts in the Seventh Circuit have concluded that the § 362(a)(1) stay cannot apply automatically to non-debtors and must be affirmatively extended by court order. *See Harley-Davidson Credit Corp. v. JHD Holdings Inc.*, No. 19-CV-155-JDP, 2020 WL 7078828, at *2 (W.D. Wis. Dec. 3, 2020) ("[I]f defendants want the automatic stay to include non-debtors, they must first seek relief with the bankruptcy court."); *In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003) ("Even where unusual circumstances exist, extension of the stay to nonbankrupt parties is not automatic and must be requested affirmatively by the debtor.").

6

Other courts around the country agree. *See, e.g.*, *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993) ("It should be noted that such extensions, although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate."); *In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. 779, 783 (Bankr. S.D.N.Y. 1996) (concluding that the stay under § 362(a)(1) is not automatically extended to non-debtors, and must be affirmatively extended).

The court agrees that the stay under § 362(a)(1) is "automatic" only as to a debtor in bankruptcy. If litigation is to be stayed against a non-debtor, such a stay must be ordered by the bankruptcy court. This conclusion is clear from the language of the statute itself. Section 362(a)(1) enjoins the commencement or continuation of any proceeding "against *the debtor*" to recover a pre-petition claim. 11 U.S.C. § 362(a)(1) (emphasis added). The statute says nothing about non-debtors and therefore does not apply to them. Moreover, there is an express extension of the stay to certain co-debtors in chapter 12 and chapter 13 cases. *See* 11 U.S.C. §§ 1201(a), 1301(a). "When Congress wants to protect non-debtors, in other words, it knows how. It did not protect them in section 362(a)." *In re Caesars Ent. Operating Co.*, 540 B.R. 637, 642–43 (Bankr. N.D. Ill. 2015).

Allowing the § 362(a)(1) stay to apply automatically to non-debtors would be untenable. Local, state, and federal courts overseeing non-bankruptcy litigation would be left to grapple with the question whether a non-debtor co-defendant is subject to the stay, and non-bankruptcy courts could reach inconsistent results in separate cases involving the same co-defendants and similar issues. Situations like the one in *A.H. Robins* are heavily fact dependent and require consideration of the consequences of the non-debtor litigation on the debtor and the estate. The

7

bankruptcy court in which a case is pending is best positioned to assess the facts and make the determination whether a particular case or claim should be stayed. Plaintiffs and non-bankruptcy courts can proceed against non-debtors with the certainty that they will not run afoul of the § 362(a)(1) stay absent an order from the bankruptcy court.

The debtors cite *McCartney v. Integra National Bank North*, 106 F.3d 506 (3d Cir. 1997), for the proposition that Thompson Exteriors is automatically protected by the § 362(a)(1) stay. In that case, Integra National Bank lent money to Lamar's Restaurant & Lounge, Inc. *Id.* at 508. The loan was secured by a lien on real estate owned by Lamar's as well as a guaranty from debtor McCartney and a second lien on his individual property. *Id.* After McCartney filed bankruptcy, the Lamar's property was sold at a sheriff's sale, and the value of the property was applied against Integra's proof of claim. *Id.* McCartney later argued that the proof of claim should be disallowed because Integra had not followed a Pennsylvania procedure that required the state court to set the amount of the deficiency within six months after the sale of the Lamar's property. *Id.*

The Third Circuit concluded that Integra was not required to comply with the Pennsylvania deficiency procedure because it was barred from doing so by the automatic stay. *Id.* at 511. The procedure would have required Integra to name McCartney in the petition seeking a deficiency or risk discharging his liability as a guarantor, but the automatic stay "effectively precluded Integra from state court actions of any type against McCartney." *Id.* at 509. "[T]here was no way for Integra to pursue a deficiency judgment action against Lamar's and to protect its right to satisfaction of Lamar's debt without involving McCartney in the process." *Id.* at 511.

8

The Third Circuit stated that the case fell "squarely under the 'unusual circumstances' exception as developed in *A.H. Robins* and its progeny" because "any deficiency judgment recovery from Lamar's would have necessarily impacted upon McCartney's estate." *Id.* This court agrees that the stay barred Integra from pursuing the deficiency judgment in state court, but the court disagrees with the Third Circuit's conclusion that the *McCartney* case falls under the *A.H. Robins* analysis. While it is true that the deficiency judgment would have impacted the estate, it could have had such an impact only if Integra had named McCartney in the deficiency judgment proceeding. And doing that would have violated the § 362(a)(1) stay because it was a commencement or continuation of a proceeding against the debtor (McCartney) to collect a pre-petition debt. The § 362(a)(1) stay prevented Integra from seeking a deficiency judgment against non-debtor Lamar's because Integra was required to name a debtor in bankruptcy to protect the full scope of its rights. Integra was otherwise able to, and did, pursue collection activity for the same debt that did not require involving the debtor. Indeed, the Third Circuit agreed that Integra conducted a sheriff's sale of the Lamar's property to collect the same debt without running afoul of the automatic stay. It was not until the debtor was involved that the automatic stay was implicated. In contrast, the plaintiffs in *A.H. Robins* could have proceeded against the non-debtor defendants without the involvement of the debtor and without impacting their rights against the debtor.

Here, 12 Gauge Construction can proceed against Thompson Exteriors without the debtors' involvement and without prejudicing its rights as to either Thompson Exteriors or the debtors. The automatic stay therefore does not prevent 12 Gauge Construction from litigating the full extent of its claims against Thompson Exteriors. Absent a court order, the § 362(a)(1)

9

stay does not prevent 12 Gauge Construction from continuing its litigation against Thompson Exteriors.

### B.   Whether the Court Should Extend a § 362(a)(1) Stay to Thompson Exteriors

With the court having concluded that extension of the stay to non-debtor Thompson Exteriors is not automatic, it would seem that 12 Gauge Construction is entitled to the primary relief it seeks in its motion, *i.e.*, an order confirming that the § 362(a)(1) stay does not apply to preclude 12 Gauge Construction from pursuing its state court lawsuit against Thompson Exteriors. At the February 16 hearing, the parties recognized that such an order would likely prompt the debtors immediately to ask the Court to extend the § 362(a)(1) stay to Thompson Exteriors. The parties therefore agreed to treat the debtors' response to 12 Gauge Construction's motion as a motion to impose the automatic stay, and both parties declined to submit further briefing or argument on the issue.[3] Accordingly, the court turns to the merits of whether the § 362(a)(1) stay should be extended to Thompson Exteriors.

We start with the *A.H. Robins* case. The debtor there was the manufacturer of a medical device called the Dalkon Shield. 788 F.2d at 996. Before the debtor filed bankruptcy, thousands of lawsuits across the country had been filed against A.H. Robins and several co-defendants, which included two doctors who had invented the device and the debtor's insurer. *Id.* The doctors were entitled to absolute indemnification from A.H. Robins, one under a state law and one under a contract, and the insurance policy and its proceeds were property of the bankruptcy

---

[3] A stay of some or all of the claims against Thompson Exteriors is likely the sort of injunctive relief that must be sought through an adversary proceeding. *See* Fed. R. Bankr. P. 7001(7). However, the failure to commence an adversary proceeding "is not a jurisdictional defect and may be waived." *In re Enfolinc, Inc.*, 233 B.R. 351, 354 (Bankr. E.D. Va. 1999). The parties' counsel indicated that their positions had been adequately presented, and they consented to continue via motion practice in the main case.

10

estate. *Id.* The debtor asked the bankruptcy court to enjoin those suits from proceeding because any judgments against the non-debtors would affect the debtor and the bankruptcy estate.

The Fourth Circuit held that a bankruptcy court may, under 11 U.S.C. §§ 105(a) and 362(a), enjoin suits filed against non-debtors. 788 F.2d at 999. To employ this authority, there must be "unusual circumstances" present, "something more than the fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy." *Id.* (internal quotation omitted). Such circumstances arise "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* The Fourth Circuit found that such circumstances were present as to the two doctors because they were entitled to indemnity from the debtor. *Id.* at 1008. If the suits against the doctors were permitted to proceed, then "a binding judgment against the debtor will result or . . . inconsistent judgments will result" because of the indemnity obligation. *Id.* A judgment against the non-debtors would necessarily result in liability for the debtor because the debtor would be required to indemnify the non-debtors for the judgment.

The Fourth Circuit relied on *In re Metal Center, Inc.*, 31 B.R. 458 (Bankr. D. Conn. 1983), which is instructive in this case. In *Metal Center*, the plaintiff sued the debtor and a non-debtor guarantor on a pre-petition debt. *Id.* at 459. The claim against the debtor was stayed under § 362(a), and debtor asked the bankruptcy court to enjoin the suit against the non-debtor guarantor as well. *Id.* The court stated that where "a debtor and a nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code." *Id.* at 462. That is, a bankruptcy court

11

should enjoin a plaintiff from proceeding against a non-debtor where the result would effectively render the debtor liable for the debt. The court ultimately concluded that the debtor would not be bound by any judgment against the non-debtor guarantor, and therefore there was no basis to enjoin the suit against the guarantor. *Id.* at 463.

The rule to be distilled from *A.H. Robins* and *Metal Center*, then, is that the "unusual circumstances" warranting imposition of a stay as to non-debtors are present where the suit against a non-debtor would necessarily render a debtor liable on the judgment, but they are not present where the debtor would not be bound or the liability of the non-debtor is distinct from the debtor's liability. *See, e.g.*, *Holland v. High Power Energy*, 248 B.R. 53, 58 (S.D. W. Va. 2000) ("[T]he 'unusual circumstance' exception does not apply where the third party codefendant has obligations that are independent and primary, not derivative of those of the debtor.") (internal quotations omitted); *Bidermann*, 200 B.R. at 784 ("[U]nusual circumstances do not exist where the debtor's insider is independently liable, the right to indemnity is not absolute, and the continuation of the suit will not interfere with the bankruptcy."); *In re Am. Film Techs., Inc.*, 175 B.R. 847, 853 (Bankr. D. Del. 1994) (imposing stay because "there is an entitlement to indemnification between the debtor and its officers and directors"); *In re Murall, Inc.*, 118 B.R. 400, 403 (Bankr. D. S.C. 1989) (refusing to extend stay because "[t]he guarantors herein agreed to primary liability, joint and several"); *see also In re Divine Ripe, LLC*, 538 B.R. 300, 312 (Bankr. S.D. Tex. 2015) ("There must be an actual, as opposed to an alleged or potential, identity of interests, such that a judgment against the non-bankrupt party would in fact be a judgment against the bankrupt party."). Even where a judgment against the non-debtor may lead to liability for the debtor, some courts have held that there must be a "serious" impact on the debtor or the estate. *See, e.g.*, *In re Uni-Marts, LLC*, 404 B.R. 767, 781 (Bankr. D. Del. 2009)

(declining to extend stay to non-debtor even though debtor would be required to indemnify non-debtor because debtor had insurance to cover any loss and "it is difficult to see how the Debtor would sustain any loss, much less one that would materially impair its reorganization").

In this case, 12 Gauge Construction's state court complaint includes three causes of action: (1) breach of contract; (2) theft by contractor in violation of Wis. Stat. § 779.02(5); and (3) statutory fraud in violation of Wis. Stat. §§ 895.446 and 943.20(1)(b) & (d). The first cause of action is against only Thompson Exteriors; the second and third causes of action are against Thompson Exteriors and the debtors. The debtors focus on the second claim, breach of Wisconsin's theft by contractor statute. Section 779.02(5) of the Wisconsin Statutes provides in relevant part:

> The use of any such moneys [i.e., the moneys, including proceeds of a mortgage, an owner pays to a prime contractor or subcontractor] by any prime contractor or subcontractor for any other purpose [other than for labor, services, materials, plans and specifications for the project] until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20. If the prime contractor or subcontractor is a corporation, limited liability company, or other legal entity other than a sole proprietorship, such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation.

Wis. Stat. § 779.02(5).

Wisconsin courts have described the language as "plain and unambiguous." *Capital City Sheet Metal, Inc. v. Voytovich*, 217 Wis. 2d 683, 689, 578 N.W.2d 643 (Ct. App. 1998). The statute "is designed to protect subcontractors and material suppliers by making money paid by the owner to the contractors and subcontractors a trust fund for the subcontractors and material suppliers." *Kraemer Bros., Inc. v. Pulaski State Bank*, 138 Wis.2d 395, 399-400, 406 N.W.2d 379 (1987). "Using the funds for some other purpose – whether personal or corporate – violates

13

the statute, and the officers of the corporation may be held personally liable to the subcontractors and suppliers." *Capital City Sheet Metal*, 217 Wis. 2d at 689.

The debtors argue that any judgment against Thompson Exteriors on the theft by contractor claim will have an effect on their bankruptcy case and the bankruptcy estate sufficient to warrant enjoining 12 Gauge from proceeding against the LLC on the theft by contractor claim. They ask that the stay be applied "to the extent that any judgment entered against Thompson Exteriors would be imputed to the Debtors." The problem is that they do not say how, exactly, the bankruptcy estate will be affected, nor do they say how a judgment against Thompson Exteriors would be imputed to the debtors. It may be that the debtors are concerned about the preclusive effect of a judgment against Thompson Exteriors in the bankruptcy court, but the debtors did not argue that such a judgment would be preclusive and the debtors' counsel argued that a judgment against Thompson Exteriors would not necessarily render the debtors liable for theft by contractor.

Indeed, the statute itself indicates that liability is not automatic for members of an LLC when the LLC commits theft by contractor. The plain and unambiguous language of the statute indicates that the individual members are personally liable only if they are "responsible for the misappropriation." Wis. Stat. § 779.02(5); *see also In re Rieck*, 439 B.R. 698, 704 (Bankr. W.D. Wis. 2010) ("As there is a dispute as to his role in the company's financial management, there is a genuine issue of material fact as to his liability."). Thus, even assuming 12 Gauge Construction can prove that Thompson Exteriors committed theft by contractor, 12 Gauge

Construction would *also* need to prove, at a minimum, that the debtors are responsible for the misappropriation before the debtors would be liable.[4]

Under the theft by contractor statute, the liability of a contractor LLC and an individual member appears to be joint and several. The liability of one is not a prerequisite to the liability of the other, and a plaintiff harmed by the theft by contractor can pursue its remedies against either the LLC or the individual members. The statute does not require the members to indemnify the LLC or vice versa. Nor have the debtors identified any other statutory, contractual, or other indemnification right that Thompson Exteriors would have against the debtors.

The debtors' counsel argued that theft by contractor suits against non-debtors should be enjoined whenever there is a bankruptcy filed by one of the individual officers, directors, members, partners, or agents of the non-debtor contractor who might be liable under the statute. Such a broad rule would take the "unusual" out of the "unusual circumstances" test from *A.H. Robins*. It would also unfairly hamstring plaintiffs like 12 Gauge Construction from pursuing the assets of the non-debtor contractor. 12 Gauge Construction has asserted that Thompson Exteriors has separate assets that can be used to satisfy any judgment entered against Thompson Exteriors. Whatever the merits of that assertion, there is no reason why the debtors' bankruptcy

---

[4] If 12 Gauge Construction separately pursues a claim against the debtors under Wis. Stat § 779.05(2), the debtors may not be bound by any judgment against Thompson Exteriors. *See, e.g.*, *In re Eagleston*, 236 B.R. 183, 188 (Bankr. D. Md. 1999) (citing *In re Metal Center* and holding that a debtor "cannot be forced into defending a cause of action that is subject to the automatic stay merely out of fear that he may be subject to issue preclusion if he opts to stand on his statutorily created rights"). Though the debtors appear to have a concern that they will be bound, neither the debtors nor 12 Gauge Construction cited any authority one way or the other, and the court leaves for another day the question whether a state court judgment against Thompson Exteriors will have any preclusive effect against the debtors.

should prevent 12 Gauge Construction from collecting against an entity and its assets that are not part of the bankruptcy estate.

## CONCLUSION

In sum, this case does not satisfy the "identity of interest" test under *A.H. Robins* because 12 Gauge Construction's claims against Thompson Exteriors can be separated from its claims against the debtors, and the debtors have not demonstrated that success on the claims against Thompson Exteriors will not have an identifiable impact on the debtors or the bankruptcy estate. Therefore, the court will not extend the § 362(a)(1) stay to enjoin 12 Gauge Construction from proceeding against Thompson Exteriors in state court.

Dated:  March 10, 2023

*Rachel Blise*
Rachel M. Blise
U.S. Bankruptcy Judge